IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LIZZY JANE FRANCIS PLUG, Individually, as Next Friend of M.C., a minor, and on behalf of the Estate of Steven Craenmehr, deceased, and ELISABETH HENDRIKA SOPHIA MARIA SMIT, widow of M.G.H. Craenmehr and mother of Steven Craenmehr, Individually, <br><br> Plaintiffs, <br><br> v. <br><br> SXSW HOLDINGS, INC. f/k/a SXSW INC., SXSW LLC f/k/a SXSW TRANSITION, LLC, PATRICK LOWE, TRAFFIC DESIGN CONSULTANTS LLC, and RASHAD OWENS, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § | Case No. 5:14-cv-1110-FB |

**DEFENDANTS SXSW, LLC AND SXSW HOLDINGS, INC.'S
<u>MOTION TO TRANSFER VENUE</u>**

Defendants SXSW, LLC and SXSW Holdings, Inc. (collectively "SXSW") move to transfer this lawsuit from the San Antonio Division of the Western District of Texas to the Austin Division pursuant to 28 U.S.C. § 1404, and would respectfully show:

**I.   Introduction and summary.**

This lawsuit involves a terrible crime committed in Austin in March 2014. Rashad Charjuan Owens, a criminal suspect fleeing from the police, sped through a block of Red River Street that was closed for a music festival and continued for another block before crashing, killing four and injuring many others. Steven Craenmehr, a Dutch citizen, was one of Owens' victims. Mr. Craenmehr's survivors are suing SXSW, claiming it was responsible for his death.

For unknown reasons, Plaintiffs' counsel filed this lawsuit in San Antonio, which has no connection to the lawsuit, the parties, the witnesses, or the evidence. SXSW therefore moves to transfer this case to the Austin Division, the far more appropriate and convenient venue.[1]

## II. The facts and the Plaintiffs' claims.

### A. Owens' flight from police and rampage on Red River Street in Austin.

According to an Austin Police Department ("APD") affidavit charging Rashad Charjuan Owens with capital murder, APD Officer Traylor was driving a police vehicle during the early morning of Thursday, March 13, 2014, when he saw a Honda Civic driven by Owens heading west on the 12th Street overpass of I-35 without its headlights on. Ex. 1 at 1. When Officer Traylor saw Owens make an improper left turn onto the southbound access road, he moved behind and initiated a traffic stop by turning on his vehicle's overhead lights. *Id.*

Owens signaled a right turn and entered a Shell station at the northwest corner of the access road and 9th Street. Ex. 1 at 1. Officer Traylor thought Owens was going to stop, but Owens squeezed his Honda between the building and the cars at the pumps and turned right onto 9th Street, heading westbound. *Id.* 9th Street is a one-way street *eastbound*. *Id.* Officer Traylor saw Owens going the wrong way, faster than conditions allowed. *Id.* His police unit could not fit between the building and the cars at the pumps, so he backed out, reentered the access road, and headed down 9th Street, trying to catch Owens. *Id.*

APD Officers Hankenmeier and Desormeaux were stationed at 9th Street and Red River Street at a barricade placed to prevent vehicles from entering Red River, which was closed for the SXSW music festival. Ex. 1 at 1. Owens turned right on Red River, maneuvering between

---

[1] Counsel for SXSW contacted counsel for Lowe and Traffic Designs Solutions, LLC, who indicated those Defendants do not oppose transfer. Counsel has contacted Owens' criminal defense counsel regarding this motion, but has not received a response.

**Defendants' Motion to Transfer Venue – Page 2**

an APD officer's personal vehicle being used to block the roadway and the curb. *Id.* Red River was heavily populated with pedestrians. *Id.* Officer Hankemeier waived his hands and arms and yelled at Owens to stop. *Id.*

Instead, Owens accelerated, hitting and running over pedestrians in the closed-off block of Red River. *Id.* at 1-2. Owens continued north at a high rate of speed, smashed through the barricades at 10th Street and kept driving north where Red River was open to traffic. *Id.* A block further, at 11th Street, Owens struck a motorcycle and a taxi. Ex. 1 at 2. He killed the motorcycle passenger, Jaime West. *Id.* Owens' Honda pushed the taxi across the intersection into a bicycle Mr. Craenmehr was riding, killing him. *Id.* Owens ran over a curb, a sidewalk, a grassy knoll, another curb, hit a van, and came to rest in a parking lot on the northwest corner of Red River and 11th Street. *Id.*

Owens fled, running west on 11th Street. Ex. 1 at 2. APD Officer Traylor caught him, and was forced to Taser him twice because he was combative. *Id.* Owens was taken to the Brackenridge Hospital Emergency Room, where a portable breath test showed a .114 blood/alcohol level. *Id.* After APD Homicide Detective Horn read Owens a Miranda warning, Owens confessed on video that when he saw the police lights, he got scared and ran because he had outstanding warrants for kidnapping and did not want to go to jail. *Id.*

According to the APD affidavit, Officer Traylor's police unit video first shows Owens failing to stop after committing at least two traffic violations. Ex. 1 at 2. That video, and other videos, show Owens turning onto Red River Street where officers and barricades were present to stop vehicular travel. *Id.* The videos show Owens accelerating into the crowd and driving for two entire city blocks without once touching his brakes. *Id.* The APD affidavit concludes:

> It is clear from video evidence that the vehicle is intentionally or knowingly hitting people and running through anything in the path of the Honda and is being driven as such

a speed that the people in the blocked off streets have no chance to get out of the path of the Honda.

It is the Affiants belief that Owens committed the offense of Murder by intentionally or knowingly causing the death of an individual and committed the offense of Capital Murder by murdering more than one individual namely: Jamie West and Steven Craenmehr.

Ex. 1 at 3.

Owens resided in Killeen, Texas. Ex. 1 at 4 A Travis County grand jury has indicted him on one count of Capital Murder and four counts of Felony Murder. Ex. 2. The Complaint alleges no connection between Owens and SXSW, Comp. ¶¶ 1-223, and there is none.

B. The Plaintiffs' claims.

The Plaintiffs allege that SXSW is responsible for Mr. Craenmehr's death. The Complaint characterizes Owens' Honda as an "errant vehicle," and alleges that SXSW failed to foresee and prevent Owens from killing and injuring pedestrians in the closed block of Red River between 9th Street and 10th Street and in the open block of Red River between 10th Street and 11th Street. Comp. ¶¶ 88-201. Specifically, the Complaint alleges that SXSW owed a legal duty to prevent Owens' murder of Mr. Craenmehr; that SXSW was allegedly negligent; and that SXSW's alleged negligence proximately caused Mr. Craenmehr's death. *Id*. ¶¶ 88-189. The Complaint also alleges public nuisance and breach of implied warranty. *Id*. ¶¶ 172-76, 190-202.

The Complaint names as defendants Pat Lowe and Traffic Design Consultants LLC, who assisted SXSW with traffic control design services. Comp. ¶¶ 7-8.

Finally, the Complaint alleges that Owens was "negligent" because he "failed to obey instructions from police officers, failed to obey traffic laws, failed to obey traffic control measures designed to deter vehicles, failed to timely apply his brakes, failed to maintain a proper lookout, failed to maintain proper control of the vehicle he was driving, and failed to turn the

vehicle to avoid colliding with pedestrians and bicyclists, including Steven Craenmehr." Comp. ¶ 205.

In a clearly coordinated effort, six other lawsuits against SXSW were filed by other victims of Owens' crimes in Travis County District and Probate courts simultaneously with this case. *See* Ex. 3, 4, 5, 6, 7, 8. Those lawsuits allege largely identical claims as this case, using largely identical wording. *Id*. Only this lawsuit was filed in San Antonio.

### III. This lawsuit should be transferred to the Austin Division because it has no connection to San Antonio and every connection to Austin.

#### A. The standards governing a motion to transfer.

The venue transfer statute provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Venue-shopping is strongly disfavored in the Fifth Circuit, especially where, as here, a lawsuit is filed in a district or division with no connection to the claims or the parties.

For example, in *In re Radmax Ltd.*, 720 F.3d 285, 298-90 (5th Cir. 2013) (orig. proceeding), the Fifth Circuit ordered a lawsuit transferred from the Marshall to the Tyler Division of the Eastern District of Texas, where no convenience factors weighed in favor of the plaintiff's chosen venue. Likewise, in *In re Volkswagen of America, Inc.*, 545 F.3d 304, 308 (5th Cir. 2008) (orig. proceeding) (en banc) (*Volkswagen II*), the full Court ordered a suit transferred from Marshall to Dallas where "the only factor that favor[ed] keeping the case in Marshall, Texas, [was] the plaintiffs' choice of venue." Similarly, *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003) (orig. proceeding), the Court ordered transfer because the district court had "erred in attributing decisive weight to the plaintiff's choice of forum" when "the

factors favoring transfer substantially outweigh[ed] the single factor of the place where plaintiff chose to file the suit."

The first question in determining a motion to transfer is whether the action "might have been brought" in the destination venue. 28 U.S.C. § 1404(a). There is no question that this lawsuit could have been brought in the Austin Division, the location where all of the events took place and where SXSW is located. *See* 28 U.S.C. § 1391(b)(1) & (2).

The second question is whether transfer is warranted "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The Fifth Circuit has identified eight factors to be considered in making that determination, derived from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). These eight "*Gilbert* factors" are:

(1) the relative ease of access to sources of proof;
(2) the availability of compulsory process to secure the attendance of witnesses;
(3) all other practical problems that make trial of a case easy, expeditious and inexpensive;
(4) all other practical problems that make trial of a case easy, expeditious and inexpensive;
(5) the administrative difficulties flowing from court congestion;
(6) the local interest in having localized interests decided at home;
(7) the familiarity of the forum with the law that will govern the case; and
(8) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Radmax*, 720 F.3d at 288 & n.4. The same standards apply to intra-district transfers as inter-district transfers: "The *Gilbert* factors "apply as much to transfers between divisions of the same district as to transfer from one district to another." *Id.* at 288.

The plaintiff's venue choice is not a *Gilbert* factor. *Volkswagen II*, 545 F.3d at 314 n.10. Rather, that choice is given weight by requiring the defendant to show "good cause" for a transfer. *Id*. The "'good cause' burden reflects the appropriate deference to which the plaintiff's

choice of venue is entitled." *Id*. at 315. "Where plaintiffs' chosen forum has little or no factual connection to the case, a transfer may be warranted." *Beltran v. Paramount Petroleum Corp.*, No. SA-07-CA-192-FB, 2007 WL 2726214, at *3 (W.D. Tex. Aug. 10, 2007). "When the movant demonstrates that the transferee venue is clearly more convenient … it has shown good cause and the district court should therefore grant the transfer." *Volkswagen II*, 545 F.3d at 315.

**B.  The *Gilbert* factors overwhelmingly favor transfer to the Austin Division.**

The *Gilbert* factors overwhelmingly favor transfer to the Austin Division. Indeed, other than the decision to file here, this lawsuit has no connection at all to this Division.

**1.  "The relative ease of access to sources of proof" strongly favors transfer.**

There are no parties, witnesses or evidence in this Division. The incident did not occur here. The Complaint never mentions San Antonio, but "Austin" appears at least 100 times. *See* Comp. ¶¶ 1-223.

The site of Owens' driving rampage and arrest was Austin. SXSW, its records and its employees are in Austin. Defendants Lowe and Traffic Design Consultants are located in Paige, Texas – less than 45 miles from Austin, but over 100 miles from San Antonio. The Austin Police Department and Travis County District Attorney's Office, their videos and records are located in Austin. The law enforcement witnesses to Owens' crimes are Austin-based: APD Detective Horn, and APD Officers Traylor, Hankenmeier, Desormeaux and Mitchell, and any other law enforcement officers working the Owens case. Ex. 1. Other City of Austin employees are likely witnesses: the employees who drew and issued the Traffic Control Plan, who issued the street closure permit, and who arranged for the street-closure barriers.

And, significantly, because Mr. Craenmehr was the victim of a crime, the Plaintiffs face an enormous legal hurdle specific to the location of that crime. The general rule in Texas is that

"a person does not have a duty to protect others from third-party criminal acts." *Trammell Crow Central Texas, Ltd. v. Gutierrez*, 267 S.W.3d 9, 13 (Tex. 2008). A premises owner or occupier[2] has a duty to protect invitees from third-party criminal acts only "if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Id*. To sustain a claim against SXSW, therefore, the Plaintiffs must show that the risk of Owens' murderous rampage was "unreasonable and foreseeable." *Timberwalk Apts. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). "Foreseeability is established through evidence of 'specific previous crimes *on or near the premises*.'" *Trammell Crow*, 267 S.W.3d at 13 (quoting *Timberwalk Apts.*, 972 S.W.2d at 756) (emphasis added). "For a landowner to foresee criminal conduct on property, there must be evidence that other crimes have occurred *on the property or in its immediate vicinity*." *Timberwalk Apts.*, 972 S.W.2d at 757 (emphasis added). There must be "evidence of criminal activity *within the specific area at issue*, *either on the landowner's property or closely nearby*." *Id*. (emphasis added). Prior crimes and events occurring away from the premises cannot establish foreseeability. *Id*. Evidence showing whether the risk of Owens' crimes was unreasonable and foreseeable, if any, will be located in Austin, not San Antonio.

The convenience of the parties and witnesses is probably the most important factor in resolving a motion to transfer venue. *E.g.*, *Fletcher v. S. Pac. Transp. Co.*, 648 F. Supp. 1400, 1401 (E.D. Tex. 1986). Pursuing this suit in San Antonio would require literally *every* witness to travel. The 160-mile round trip between Austin and San Antonio poses a substantial inconvenience, especially for the many public servant witnesses. Even if that inconvenience

---

[2] The Plaintiffs allege that SXSW "occupied" the blocks that were closed to traffic and, apparently, the 1000 block of Red River where Mr. Craenmehr was killed, which was not closed to traffic. *See* Complaint ¶ 149. SXSW disputes this contention, but regardless of whether SXSW occupied the streets, the Plaintiffs must show that the risk of Owens' criminal conduct was unreasonable and foreseeable. *Trammell Crow*, 267 S.W.3d at 13.

could be characterized as "slight" – and it cannot – "the question is *relative* ease of access, not *absolute* ease of access. *Radmax*, 720 F.3d at 288.

        **2.**    **"The availability of compulsory process to secure the attendance of witnesses" strongly favors transfer.**

Only witnesses within 100 miles of the courthouse may be compelled to testify at trial. Fed. R. Civ. P. 45(c)(1)(A). A 100-mile radius around Austin for compulsory process includes all of Austin and San Antonio, plus Killeen (Owens' residence), Temple and the university towns of Waco and College Station. *See* Ex. 9. It also includes Bryan, the headquarters of N-Line Traffic Management, LP, the non-party contractor that provided the City of Austin the barriers used to close Red River. *See* Ex. 3 at 4. In contrast, a 100-mile radius around San Antonio barely reaches the southern half of Round Rock, and omits Killeen, Temple, Waco, Bryan and College Station. *Id.* Owens' criminal prosecution is pending, the grand jury transcript has not been released, so SXSW has not been able to identify all material witnesses at the scene, but logically they are more likely to live within 100 miles of Austin than San Antonio. Moreover, because the Plaintiffs have not sued the City of Austin, its law enforcement officers and other witnesses would need to be subpoenaed to attend court in San Antonio.

        **3.**    **"The cost of attendance for willing witnesses" strongly favors transfer.**

All known witnesses would be required to shuttle back and forth to San Antonio if this case is not transferred. Even if City of Austin witnesses agreed to attend voluntarily, they would still incur significantly greater costs and inconveniences. The 160-mile Austin/San Antonio round-trip takes three hours, even with light traffic on I-35, which is rare. There would be fuel, mileage and food expenses. And, most importantly, taxpayer-supported public safety officers would be taken away from their duties for far longer if this case remains in San Antonio.

### 4. "Other practical problems that make a trial of a case easy, expeditious and inexpensive" is neutral or favors transfer.

Transfer poses no threat of delay. SXSW's responsive pleading is not due until March 6, 2015. Defendants Lowe, Traffic Design Solutions and Rashad Owens have not appeared. Even if transfer imposes a slight administrative delay, "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would militate against transfer in every case." *Radmax*, 720 F.3d at 289.

### 5. "Administrative difficulties flowing from court congestion" is neutral or favors transfer.

The San Antonio and the Austin divisions both have busy dockets. The Austin Division's capacity, however, has recently has been augmented with a new, larger courthouse and with the newly-confirmed Judge Robert Pittman taking on a third of the Austin cases.

### 6. "The local interest in having localized interests decided at home" strongly favors transfer.

This lawsuit presents very local interests. Owens committed an unprecedented, heinous crime. He murdered two pedestrians, a cyclist and a motorcycle passenger, and injured many others in downtown Austin. Although incorrect, the Complaint alleges that SXSW and the City of Austin violated various provisions of the Austin City Code. Whether, and to what extent, SXSW is legally obligated to predict and prevent violent crimes from happening in Austin during the SXSW festivals is an intensely important local question.

### 7. "The familiarity of the forum with the law that will govern the case" is neutral or favors transfer.

Because this is a diversity case, federal procedural law and Texas substantive law will apply in either venue. However, the Complaint alleges violations of the Austin City Code, and

to the extent those allegations are material, the Austin Division has greater familiarity with the Austin City Code.[3]

> **8. "The avoidance of unnecessary problems of conflict of laws or application of foreign law" is neutral or favors transfer.**

Transfer will neither cause nor avoid conflicts of law. But, as noted, the Complaint alleges violations of the Austin City Code, so this factor favors transfer to the Austin Division.

## IV. Summary and Prayer.

The effect of Plaintiffs' counsel filing suit in the San Antonio Division will be unnecessary costs, inconvenience and disruption to the defendants and witnesses, including public safety officers and other public employees. The Fifth Circuit has given clear direction that counsel should not file suit in a venue that is unrelated to the controversy, and that such lawsuits, if filed, should be transferred promptly to the more convenient and appropriate venue. SXSW therefore moves that this lawsuit be transferred to the Austin Division.

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 480-5764
(512) 536-9908 (Fax)
pkennedy@gdhm.com
celliott@gdhm.com

/s/ Peter D. Kennedy
    Peter D. Kennedy
    State Bar No. 11296650
    Christopher L. Elliott
    State Bar No. 06535400

**ATTORNEYS FOR SXSW HOLDINGS, INC. AND SXSW LLC**

---

[3] *See, e.g.*, *United Motorcoach Ass'n v. City of Austin*, No. A-13-CA-1006-SS, 2014 WL 1091966 (W.D. Tex. Mar. 17, 2014).

## CERTIFICATE OF CONFERENCE

I certify that on January 26, 2015, I spoke by telephone to Plaintiff's counsel, Scott Hendler, and conferred in good faith in an effort to resolve the issue raised in the above motion to transfer, and have not been able to reach agreement because the Plaintiffs' counsel indicated that he prefers to litigate this case in this venue, while the Defendants seek transfer to the Austin Division.

/s/ Peter D. Kennedy
Peter D. Kennedy

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Scott Hendler
Sean M. Lyons
Rebecca Ruth Webber
Hendler Lyons Flores, PLLC
1301 W. 25th Street, Suite 400
Austin, Texas 78705

and by Certified Mail/Return Receipt Requested to the following who is not eligible for notification by the CM/ECF system:

Clem Lyons
Law Office of Clem Lyons, PC
126 Villita Street
San Antonio, Texas 78205

/s/ Peter D. Kennedy
Peter D. Kennedy

# EXHIBITS IN SUPPORT OF
# DEFENDANTS SXSW HOLDINGS, INC. AND SXSW LLC'S
# MOTION TO TRANSFER VENUE

1. Affidavit for Warrant of Arrest and Detention, Cause No. D1DC14100031, In the District Court of Travis County, Texas.

2. Indictment of Rashad Charjuan Owens, in the 403rd District Court of Travis County, Texas.

3. Original Petition, *Nguyen v. SXSW Holdings, Inc., et al.*, No. D-1-GN-14-005295, 345th District Court, Travis County, Texas, pp. 1-4, 49.

4. Original Petition, *Sanchez v. SXSW Holdings, Inc., et al.*, No. D-1-GN-14-005309, 98th District Court, Travis County, Texas, pp. 1-2, 46.

5. Original Petition, *O'Neal v. SXSW Holdings, Inc., et al.*, No. D-1-GN-14-005314, 201st District Court, Travis County, Texas, pp. 1-2, 45-46.

6. Original Petition, *Hall v. SXSW Holdings, Inc., et al.*, No. D-1-GN-14-005318, 53rd District Court, Travis County, Texas, pp. 1-2, 42.

7. Original Petition, *Davis v. SXSW Holdings, Inc., et al.*, No. D-1-GN-14-005323, 200th District Court, Travis County, Texas, pp. 1-2, 43.

8. Original Petition, *Estate of Jamie Cook West*, Cause No. C-1-PB-14-002212, Probate Court No. 1, Travis County, Texas, pp. 1-2, 43.

9. Map showing 100-mile radius around Austin and 100-mile radius around San Antonio.